IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| AXIS SURPLUS INSURANCE COMPANY, HELVETIA SWISS INSURANCE COMPANY OF LIECHTENSTEIN, LTD., and QBE CORPORATE LIMITED, <br><br> Plaintiffs, <br><br> vs. <br><br> PORT OF PORT ARTHUR NAVIGATION AUTHORITY OF JEFFERSON COUNTY, <br><br> Defendant. | No. 1:21-CV-00519-MAC-ZJH |

## REPORT AND RECOMMENDATION DISMISSING CASE

This declaratory-judgment action is assigned to the Honorable Marcia A. Crone, United States District Judge, and is referred to the undersigned United States Magistrate Judge for pretrial management. Doc. No. 16. Pending before the court is Defendant Port of Port Arthur Navigation Authority of Jefferson County's *12(b)(6) and 12(b)(1) Motion to Dismiss Plaintiffs' Suit*. Doc. No. 5.

In its motion, the Port asserts that it is immune from suit because it is a state agency that has not waived its sovereign or governmental immunity. Plaintiffs AXIS Surplus Insurance Company, Helvetia Swiss Insurance Company in Liechtenstein, Ltd., and QBE Corporate Limited (collectively "Underwriters") have responded, arguing that the Port is not immune for various reasons. Doc. No. 9. After reviewing the pleadings on file, the undersigned recommends that the case be dismissed, but for a different reason: The court should exercise its discretion to dismiss a federal declaratory-judgment action under circumstances present here. *See Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003).

I.    **Factual and Procedural History**

On August 27, 2020, Hurricane Laura made landfall and caused "significant" damage to the Port's properties. Doc. No. 5 at 2. On September 9, 2020, the Port provided Underwriters a property loss notice; five days later, representatives of Underwriters' adjusting company inspected the damage. Doc. No. 1 at 3-4. On October 1, 2020, the Port provided the adjusting company with estimates for claims related to business interruption and dredging. *Id*. at 4-5. Only a few days later, a second hurricane—Hurricane Delta—passed through the area of the Port's properties. *Id*. at 5.

On May 24, 2021, the Port submitted a $4.7-million damage estimate for its properties. *Id*. According to Underwriters, this was the first time they learned that the Port was expanding its claim beyond the buildings that the adjusters inspected back on September 14, 2020. *Id*. Further, the estimate allegedly suggested that Hurricane Delta may have caused some of the damage, an event for which the Port had not yet filed a claim. *Id*. at 6. Between June 28 and June 30, 2021, the properties were inspected again—this time by engineers working for Underwriters. *Id*.

On August 15, 2021, believing it was entitled to prompt payment, the Port sent Underwriters a "Notice Letter Pursuant to Tex. Ins. Code § 541.154(a)-(c) & 542A.003," which threatened to file a lawsuit and claimed that Underwriters' policy and extra-contractual obligations totaled roughly $18.4 million. *Id*. at 7; Doc. No. 9 at 12. It wasn't until after the Port sent the letter, however, that its broker submitted a notice of loss based on Hurricane Delta's damage. Doc. No. 1 at 7. On October 14, 2021, Underwriters responded to the Port's letter to find out how much money, if any, they owed the Port under the contracts. Doc. No. 9 at 13. Underwriters roundly rejected that they owed the $18.4-million amount. Doc. No. 1 at 8.

2

According to Underwriters, the Port repeatedly ignored their requests for further information. *Id*. at 4-8. To this day, they claim that a "significant dispute" remains regarding these issues:

- the extent and cost of repairs to the properties,

- substantiation of the Port's business-interruption claim,

- the extent of coverage as to the Port's dredging claim related to Hurricane Laura,

- the scope of the Port's Hurricane Delta claim,

- the extent to which such claims are covered, excluded, and/or limited under the terms, conditions, and exclusions of the Policies,

- the Port's duty to provide requested records and information, and

- contract interpretation issues under the policies.

*Id*. at 8.

Accordingly, on October 15, 2021, Underwriters filed their *Original Complaint for Declaratory Judgment* under 28 U.S.C. § 2201, the federal Declaratory Judgment Act. Doc. No. 1. Underwriters' complaint sought "determinations as to the interpretation of certain provisions of the Policies and determinations as to whether the Port is entitled to coverage under the Policies for its claimed losses, and if so, the extent to which payment may be owed." *Id*. at 8-9.

On November 18, 2021, the Port filed the pending *12(b)(6) and 12(b)(1) Motion to Dismiss Plaintiffs' Suit*, where it asserted multiple theories of governmental and sovereign immunity Doc. No. 5. The next day, the Port filed a state-court petition against, among others, each of the three insurance companies who are Plaintiffs to this suit. Doc. No. 9-3. In the state-court suit, the Port asserted that Underwriters (1) failed to comply with the terms of the contract, (2) engaged in false, misleading, unfair, or deceptive acts or practices, (3) violated the Texas Insurance Code by failing to investigate the claim or request necessary information, give proper notice of the acceptance or

rejection of the claim, timely accept or deny the claim, properly represent pertinent facts or policy provisions, implement reasonable investigation standards, or attempt a good-faith settlement, (4) breached the duty of good faith and fair dealing, and (5) made representations about the claim that were "material and false." *Id*. at 13-17. The state-court suit remains pending. *See* Appendix.

## II.     Discussion

For declaratory-judgment actions, "[a] federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams*, 343 F.3d at 387. The court must analyze each of these factors "on the record." *Am. Bankers Life Assurance Co. of Fl. v. Overton*, 128 F. App'x 399, 403 (5th Cir. 2005).

### A.  Whether the Action is Justiciable

First, the court must determine whether the action is justiciable. "The Declaratory Judgment Act of 1934 . . . is operative only in respect to controversies which are such in the constitutional sense . . . A 'controversy' in this sense must be one that is appropriate for judicial determination." *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 27 (5th Cir. 1989) (citing *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239-40 (1937)). This means that a request for declaratory judgment must be "such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Rowan*, 876 F.2d at 28.

Here, there is an actual controversy among the parties about how much money, if any, Underwriters owe the Port. This issue can be "presently litigated and decided" without the development of a future factual situation that may never develop. *See id*.; *Sherwin-Williams*, 343

F.3d at 387 (request for declaratory judgment that paint manufacturer had no duty to reimburse school district for lead-paint abatement presented actual controversy); *Certain Underwriters, at Lloyds, London v. Shokrian*, No. 4:11-CV-244, 2011 WL 4357187, at \*2 (E.D. Tex. Aug. 26, 2011), *R. & R. adopted*, No. 4:11-CV-244, 2011 WL 4357184 (E.D. Tex. Sept. 15, 2011) (substantial controversy existed regarding the coverage and construction of insurance policy after hailstorm).  Accordingly, this action is justiciable.

### B.  Whether the Court has Authority to Grant Declaratory Relief

Second, the court must determine whether it has authority to grant declaratory relief.  In other words, the court must decide if it must exercise "mandatory abstention."  *See Sealed v. Sealed*, No. 94-30148, 1994 WL 487245, at \*1 (5th Cir. Aug. 18, 1994).  The first part of this test is a standard subject-matter jurisdiction inquiry.  *See Sherwin-Williams*, 343 F.3d at 387-88.  Unlike for most claims arising under federal statutes, the Declaratory Judgment Act "does not provide a federal court with an independent basis for exercising subject-matter jurisdiction." *In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 270 (5th Cir. 2001).  Therefore, "the relevant cause of action must arise under some other federal law."  *Gaar v. Quirk*, 86 F.3d 451, 453 (5th Cir. 1996).

Complete diversity among the parties would provide an independent source of subject-matter jurisdiction.  *See* 28 U.S.C. § 1332(a).  The Port has demanded over $18 million, so the amount in controversy easily exceeds $75,000 exclusive of interest and costs.  And according to Underwriters' complaint, the citizenship of each of the Plaintiffs lies outside of Texas: AXIS is incorporated under the laws of Illinois with its principal place of business in the state of Georgia, Helvetia is incorporated and has its principal place of business in Liechtenstein, and QBE is incorporated and has its principal place of business in the United Kingdom.  Doc. No. 1 at 1.

The Port's citizenship requires more analysis. While certainly located in Texas, what matters is whether it's categorized as a "political subdivision" or "the arm or alter ego" of Texas. If it is a political subdivision, then it is a citizen of Texas for diversity purposes. *See City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 209 n.2 (5th Cir. 2005) (citing *Moor v. Cnty. of Alameda*, 411 U.S. 693, 717 (1973)). If, rather, the Port is Texas's "arm or alter ego," then it's not a citizen of any state, and diversity does not exist. *See Lamar Co., L.L.C. v. Miss. Transp. Comm'n*, 976 F.3d 524, 530, 534 (5th Cir. 2020) (citing *Moor*, 411 U.S. at 717); *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 706 (5th Cir. 2008). Interestingly enough, this is the exact issue the parties briefed regarding the immunity question. Here, the court need not conduct a full-fledged immunity investigation. If the Port is a Texas citizen, then subject-matter jurisdiction exists, the analysis continues below, and dismissal ultimately occurs. If it's not a citizen, then subject-matter jurisdiction does not exist. Because dismissal results either way, it is immaterial—in this context—whether the Port is a political subdivision or "arm or alter ego" of Texas.

Should the court determine that it has subject-matter jurisdiction, it still "may not consider the merits of the declaratory judgment action when 1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, 2) the state case involves the same issues as those involved in the federal case, and 3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act." *AXA Re Prop. & Cas. Ins. Co. v. Day*, 162 F. App'x 316, 320 (5th Cir. 2006) (citing *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993)).

Here, the court has authority to grant declaratory relief because the Port had not *previously* filed a claim against Underwriters on the day Underwriters filed their declaratory lawsuit.

*Compare* Doc. No. 1, *with* Doc. No. 9-3 at 1; *see AXA*, 162 F. App'x at 319; *Sealed*, 1994 WL 487245, at *3 (operative date for determining whether declaratory defendant has "previously" filed state-court lawsuit is "the time of the filing"). Since "[t]he absence of any of the three factors defeats mandatory abstention," the court has authority to decide this case. *See Sealed*, 1994 WL 487245, at *2.

### C. Whether the Court Should Exercise its Discretion to Decide or Dismiss the Action

Third, even if the court has authority to grant declaratory relief, it still must determine whether to exercise its discretion to decide or dismiss the action. "The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Sherwin-Williams*, 343 F.3d at 389 (internal citation omitted). A district court may raise abstention *sua sponte*, including in the declaratory-judgment context.[1] *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737 n.1 (5th Cir. 1999); *New England Ins. Co. v. Barnett*, Civ. A. No. 06-555, 2007 WL 3288880, at *3 (W.D. La. Nov. 6, 2007).

The Fifth Circuit uses the factors enunciated in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 586 (5th Cir. 1994) to "guide a district court's exercise of discretion to accept or decline jurisdiction over a declaratory judgment suit." *Sherwin-Williams*, 343 F.3d at 390. "[U]nless the district court addresses and balances the purposes of the Declaratory Judgment Act and the factors relevant to

---

[1] While the Fifth Circuit has used the term "discretionary abstention" in the declaratory-judgment context, that term is "not entirely accurate." *See Sealed*, 1994 WL 487245, at *1; *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 378 (7th Cir. 2010). A district court's discretion to hear these types of cases derives from the text of the Declaratory Judgment Act itself, not from a group of judicially created doctrines. *Med. Assur. Co.*, 610 F.3d at 378; *see* 28 U.S.C. 2201(a) ("any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) ("We have repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'"). For clarity and convenience, though, the undersigned will use the term "abstention" throughout this order.

the abstention doctrine on the record, it abuses its discretion." *Trejo*, 39 F.3d at 590.  The relevant

factors that the court "must" consider are:

   (1) whether there is a pending state action in which all of the matters in controversy
       may be fully litigated;

   (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

   (3) whether the plaintiff engaged in forum shopping in bringing the suit;

   (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence
       in time or to change forums exist;

   (5) whether the federal court is a convenient forum for the parties and witnesses;

   (6) whether retaining the lawsuit in federal court would serve the purposes of judicial
       economy; and

   (7) whether the federal court is being called on to construe a state judicial decree
       involving the same parties and entered by the court before whom the parallel state
       suit between the same parties is pending.

*Id.* at 590-91.  The undersigned will analyze each factor in turn.

        1.  <u>There is a pending state action in which all of the matters in controversy may
            be fully litigated.</u>

      The first *Trejo* factor is "whether there is a pending state action in which all of the matters

in controversy may be fully litigated."  39 F.3d at 590.  This consideration arises from "federalism

or comity concerns because of the potential for inconsistent state and federal court judgments."

*Sherwin-Williams*, 343 F.3d at 391.  Essentially, higher courts feel that "it would be uneconomical

as well as vexatious for a federal court to proceed in a declaratory judgment suit where another

suit is pending in state court presenting the same issues, not governed by federal law, between the

same parties."  *RLI Ins. Co. v. Wainoco Oil & Gas Co.*, 131 F. App'x 970, 972 (5th Cir. 2005)

(citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)).  Put differently, "if the

federal declaratory judgment action raises only issues of state law, and a state case involving the

same state law issues is pending, generally the state court should decide the case and the federal

court should exercise its discretion to dismiss the federal suit." *Sherwin-Williams*, 343 F.3d at

390-91.

That said, the existence of a parallel state proceeding isn't dispositive. "[T]he presence of

a related state proceeding does not automatically require a district court to dismiss a federal

declaratory judgment action," just as "[t]he lack of a pending parallel state proceeding should not

automatically require a district court to decide a declaratory judgment action." *Sherwin-Williams*,

343 F.3d at 394. In fact, the Fourth and Ninth Circuits have held that a district court may dismiss

a declaratory action even when there's no pending parallel state case. *See id.* at 392 (citing *Aetna*

*Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998) and *Golden Eagle Ins.*

*Co. v. Travelers Cos.*, 103 F.3d 750, 754 (9th Cir. 1996), *overruled on other grounds*, *Gov't Emps.*

*Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998)). Still, though, the presence or absence of a

pending parallel state proceeding is an "important" factor. *See id.* at 394.

Here, there is a parallel state proceeding involving the same parties and issues. Doc. No.

9-3; *see* Appendix.[2] The federal declaratory Plaintiffs (Underwriters) are Defendants in the state

proceeding, and the declaratory Defendant (the Port) is the Plaintiff in the state proceeding. Doc.

No. 9-3. The issues are also the same. Underwriters' declaratory suit seeks a determination of

how much, if anything, it owes the Port based on how the court interprets certain provisions of the

contract. Doc. No. 1 at 9. The Port's state-court suit also seeks a determination of how much

Underwriters owe the Port based on their alleged failure to adequately compensate the Port under

---

[2] A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007); *see also Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020) (district court properly took judicial notice of state court records of inmate's postconviction proceedings), *cert. denied sub nom. Gus Paez v. Inch*, 141 S. Ct. 309 (2020); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings.").

the terms of the contract. Doc. No. 9-3 at 19. In both cases, the respective court will be called

upon to determine what was damaged, what was covered, whether Underwriters complied with the

contract, and, ultimately, what is owed. Because there is a parallel state proceeding involving the

same parties and issues, this factor favors abstention.

2. <u>Underwriters filed suit in anticipation of the Port's state-court lawsuit but did not abusively forum shop.</u>

The second *Trejo* factor is "whether the plaintiff filed suit in anticipation of a lawsuit filed

by the defendant" and the third is "whether the plaintiff engaged in forum shopping in bringing

the suit." 39 F.3d at 590-91. Because both speak to "whether the plaintiff is using the declaratory

judgment process to gain access to a federal forum on improper or unfair grounds," the undersigned

will consider these factors together. *See Sherwin-Williams*, 343 F.3d at 391.

The third factor qualifies the second. "Federal declaratory judgment suits are routinely

filed in anticipation of other litigation" and "often involve the permissible selection of a federal

forum over an available state forum," so the pertinent question is whether the declaratory plaintiff

filed the action "in search of more favorable law." *See id*. at 391, 398, 399. In other words,

"[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in

anticipation of state court litigation, is not *in itself* improper anticipatory litigation or otherwise

abusive 'forum shopping.'" *Id.* at 391. (emphasis added).

For example, "avoiding multiple lawsuits in multiple courts is a legitimate reason for

bringing [a] federal declaratory judgment action." *Id*. at 399 (citing *Travelers*, 996 F.2d at 776-

77). The Fifth Circuit has found that a declaratory plaintiff did not engage in impermissible forum

shopping when it filed its lawsuit in anticipation of the declaratory defendants filing "a number of

similar suits" in state court. *See id*. at 398. Since the plaintiff was merely trying "to avoid the

repetitive litigation it would encounter if the state court suits were filed," the court reversed the district court's dismissal of the case. *Id*. at 399, 401.

Underwriters certainly filed this suit anticipating the Port's state-court suit: The Port sent Underwriters a notice letter pursuant to the Texas Insurance Code that threatened to file a lawsuit, then Underwriters filed this suit on the very last day of the Port's statutorily mandated pre-suit waiting period. Doc. No. 9-1 at 1–6; Doc. No. 1 at 7; *see* Tex. Ins. Code Ann. § 541.154. But by filing this suit, Underwriters weren't searching for more favorable law, as state substantive law would govern either proceeding. Underwriters cannot claim, however, that they were avoiding repetitive litigation, as there is no evidence of other state-court suits filed against them involving similar issues. Taken together, these factors do not counsel for or against abstention. While Underwriters have likely filed an anticipatory lawsuit and cannot rely on the repetitive-litigation rationalization, it's not the kind of suit that courts have found constitutes abusive forum shopping. Accordingly, factors two and three are neutral on abstention.

3. There are few inequities in requiring Underwriters to litigate in Texas state court.

The fourth factor is "whether possible inequities" exist "in allowing the declaratory plaintiff to gain precedence in time or to change forums." *Trejo*, 39 F.3d at 591. Like the two before it, "this factor goes to fairness." *Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 168 (5th Cir. 2015). The existence of the state-court suit is important to weighing the inequities.

Temporal and geographic concerns make up this factor. If the federal and state-court actions are both in their early stages, then there is no inequity in continuing the case in either forum, as long as it does not proceed in both. *See United Nat. Ins. Co. v. Jackson Redevelopment Auth. Bd. of Comm'rs*, No. 3:14-CV-466-CWR, 2015 WL 144930, at *2 (S.D. Miss. Jan. 12, 2015).

In insurance disputes specifically, an insurer faces "little inequity" if coverage determinations occur in a state court where the subject of the insurance is located. *RLI Ins. Co.*, 131 F. App'x at 973.

Here, the federal lawsuit is in its early stages. The parties are in discovery, and the instant motion—filed only a month after the complaint—remains the sole dispositive motion on the docket. It's unclear how far the state-court suit has progressed, if at all. *See* Appendix. What's clear is that little inequity would result in requiring Underwriters to litigate these issues in Texas state court. When Underwriters sold the policy in question to the Port, they exposed themselves to potential liability in Texas state courts. Accordingly, this factor favors abstention.

#### 4. The federal court is a convenient forum for the parties and witnesses.

The fifth factor is "whether the federal court is a convenient forum for the parties and witnesses." *Trejo*, 39 F.3d at 591. Here, both courts are equally convenient. The United States Court House and Jefferson County Court House in Beaumont are less than a mile apart. This factor weighs against abstention.

#### 5. Retaining the lawsuit in federal court would not serve the purposes of judicial economy.

The sixth factor is "whether retaining the lawsuit in federal court would serve the purposes of judicial economy." *Trejo*, 39 F.3d at 591. A federal court should dismiss a case if "deference to a pending state action in which all of the primary insurers are joined would allow one court to decide the issues in [the] case." *RLI Ins. Co.*, 131 F. App'x at 973. This is especially true if the parties have not yet "fully briefed" the insurance issues in the federal action. *See Ironshore*, 624 F. App'x at 168. A federal court should also dismiss a case if only state claims are at issue. *See Evanston Ins. Co. v. Tonmar, L.P.*, 669 F. Supp. 2d 725, 734 (N.D. Tex. 2009) (calling it "a waste of judicial resources to litigate a federal declaratory judgment action involving only issues of state

law that are already being litigated in" state court); *see also Sealco Int'l, Inc. v. Control De Deschechos Industriales Y Monitoreo Ambiental, S.A.*, No. 3:99-CV-2915-H, 2000 WL 380251, at *4 (N.D. Tex. Apr. 13, 2000) ("[C]omity favors the state court hearing a case solely pertaining to state law.").  The reverse is also true: "The presence of federal law issues must always be a major consideration weighing against surrender of federal jurisdiction." *Sherwin-Williams*, 343 F.3d at 396 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983)).

Here, since all the primary insurers are joined in the state proceeding, abstention will allow one court to decide every issue.  Further, while the parties have briefed the immunity issue, they haven't done so for any of the insurance issues.  And since those issues are based strictly on state law, no federal questions are present.  In sum, the goal of judicial economy favors abstention.

6.  <u>There is no judicial decree to construe.</u>

The seventh and final factor is "whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending." *Trejo*, 39 F.3d at 591.  There is no judicial decree to construe here, which is either neutral or weighs against abstention.  *Compare RLI Ins. Co.*, 131 F. App'x at 973 (seventh factor neutral because it was "not implicated"), *with Ironshore*, 624 F. App'x at 168 (lack of judicial decree weighed against abstention).

**D. Conclusion**

This action is justiciable because there is an actual controversy among the parties about how much money, if any, Underwriters owe the Port.  Further, the court might have authority to grant declaratory relief because complete diversity could exist, and the Port had not previously filed a claim against Underwriters when Underwriters filed this lawsuit.  However, the court should exercise its discretion to dismiss this case.  Viewed mathematically, three *Trejo* factors favor

abstention, one weighs against, two are neutral, and one is either neutral or against.  Holistically, the factors favor abstention because a single pending parallel state proceeding can completely resolve the exclusively state-law issues between all parties to this lawsuit.  Accordingly, the case should be dismissed.

### III.    Recommendation

Because this case meets the requirements for discretionary dismissal under the Federal Declaratory Judgment Act, the undersigned recommends that the case be **DISMISSED**.

### IV.    Objections

Under 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation.  Objections to this report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report.  *See* 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b)(2).  A party who objects to this report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings

of fact and conclusions of law accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SIGNED this 21st day of July, 2022.

_____

Zack Hawthorn
United States Magistrate Judge

https://research.txcourts.gov/CourtRecordsSearch/ViewCasePrint/6cf413b0e2555a758344af3c02ae5acc

# Case Information

## PORT OF PORT ARTHUR NAVIGATION AUTHORITY OF JEFFER VS CERTAIN UNDERWRITERS AT LLOYDS LONDON SUBSCRIBING

B-208912

| Location | Case Category | Case Type | Case Filed Date |
|---|---|---|---|
| Jefferson County - District Clerk | Civil - Contract | Debt/Contract - Consumer/DTPA | 11/19/2021 |

## Parties 6

| Type | Name | Attorneys |
|---|---|---|
| Plaintiff | PORT OF PORT ARTHUR NAVIGATION AUTHORITY OF JEFFER | Nishi Kothari |
| Defendant | CERTAIN UNDERWRITERS AT LLOYDS LONDON | |
| Defendant | AXIS SURPLUS INSURANCE COMPANY | |
| Defendant | HELVETIA SWISS INSURANCE COMPANY | |
| Defendant | QBE CORPORATE LTD | |
| Defendant | EDWARD J MILLER | |

## Events 7

| Date | Event | Type | Comments | Documents |
|---|---|---|---|---|
| 11/19/2021 | Filing | Petition | Plaintiff's Original Petition | 2021-11-18 POP.pdf, Request for Process.pdf |
| 12/6/2021 | Filing | No Fee Documents | Edward J Miller.ROS | Edward J Miller.ROS.pdf |
| 12/13/2021 | Filing | No Fee Documents | Certain Underwriters at Lloyd's London.AOS | Certain Underwriters at Lloyd's London.AOS.pdf |
| 12/13/2021 | Filing | No Fee Documents | Helvetia Swiss Insurance Co.AOS | Helvetia Swiss Insurance Co.AOS.pdf |
| 12/13/2021 | Filing | No Fee Documents | QBE Corporate.AOS | QBE Corporate.AOS.pdf |
| 12/27/2021 | Filing | Motion (No Fee) | Defendants' Motion to Dismiss or to Stay | 2021-12-27 - Defendants' Mtn to Dismiss or Stay Jefferson County Proceedings.pdf, 2021-12-27 - Proposed Order Granting Defendants' Mtn to Dismiss or Stay.pdf |
| 12/27/2021 | Filing | Answer/Response | Defendants' Original Answer Subject to Defendants' Motion to Dismiss or to Stay | 2021-12-27 - Defendants' Original Answer Subj. to Mtn to Dismiss or Stay.pdf |

© 2022 Tyler Technologies, Inc. | All Rights Reserved

Version: 2022.6.0.10101

